1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7
EASTERN DISTRICT OF CALIFORNIA
8

9  DOMINGO JOSEPH RAMIREZ,              CASE NO. 1:04-cv-06418-OWW-DLB PC

10              Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                         RECOMMENDING PLAINTIFF'S MOTION
11      v.                               FOR SUMMARY JUDGMENT BE DENIED

12  A.K. SCRIBNER, et al.,               (Doc. 78)

13              Defendants.              FINDINGS AND RECOMMENDATIONS
                                         RECOMMENDING THAT DEFENDANTS'
14                                       MOTION FOR SUMMARY JUDGMENT BE
                                         DENIED IN PART AND GRANTED IN PART,
15                                       AND THIS MATTER BE SET FOR JURY
                                         TRIAL
16
17  _____/    (Doc. 92)

18      **Findings and Recommendations Addressing Cross-Motions for Summary Judgment**

19  **I.      Procedural History**

20          Plaintiff Domingo Joseph Ramirez ("plaintiff") is a state prisoner proceeding pro se and in

21  forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on

22  plaintiff's complaint, filed October 18, 2004, against defendants Gutierrez, Scribner, Warren, Mason,

23  and Rivera ("defendants"). (Doc. 1.)  On June 1, 2006, plaintiff filed a motion for summary

24  judgment. (Docs. 78-81).  After obtaining an extension of time, defendants filed a cross-motion for

25  summary judgment on July 21, 2006, and opposition to plaintiff's motion.  (Docs. 92-97).  After

26  obtaining extensions of time, plaintiff filed his opposition to defendants' motion and a reply to

27
28

1  defendants' opposition on January 16, 2007.[1] (Docs. 110-115). Defendants filed their reply brief in

2  support of their motion for summary judgment on February 13, 2007 (Doc. 122). Plaintiff's surreply,

3  filed without leave of court on March 9, 2007, was stricken in a separate order.

4  **II.   Evidentiary Disputes**

5        Each party has filed motions seeking to strike portions of the opposing party's declarations.

6  (Docs. 97, 122). Plaintiff has also filed a response to defendants' motion (Doc. 110).

7        This court has carefully reviewed and considered all arguments, points and authorities,

8  declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections

9  and other papers filed by the parties. Omission of reference to an argument, document, paper or

10 objection is not be construed to the effect that this court did not consider the argument, document,

11 paper or objection. This court thoroughly reviewed and considered the evidence it deemed

12 admissible, material and appropriate for summary judgment.

13 **III.   Summary Judgment Standard**

14       Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

15 as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

16 Civ. P. 56(c). Under summary judgment practice, the moving party

17              [A]lways bears the initial responsibility of informing the district court
               of the basis for its motion, and identifying those portions of "the
18              pleadings, depositions, answers to interrogatories, and admissions on
               file, together with the affidavits, if any," which it believes
19              demonstrate the absence of a genuine issue of material fact.

20 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that

21 there exists no genuine issue of material fact and that the moving party is entitled to judgment as a

22 matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

23       As to plaintiff's motion for summary judgment, "[w]here the moving party has the burden

24 of proof, . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could

25 find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986)

26 (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of

27

28       [1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
     court in an order filed on March 17, 2005. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 19.)

1  Material Fact 99 F.R.D. 465, 487 (1984)).  Thus, on a summary judgment motion, the moving party

2  must demonstrate there is no triable issue as to the matters alleged in its own pleadings.  Id.  This

3  requires the moving party to establish beyond controversy every essential element of its claim or

4  defense.  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).  The moving party's

5  evidence is judged by the same standard of proof applicable at trial.  Anderson v. Liberty Lobby,

6  Inc., 477 U.S. 242 (1986).

7          As to defendant's motion for summary judgment, "where the nonmoving party will bear the

8  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

9  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

10 Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Indeed, summary judgment should be entered,

11 after adequate time for discovery and upon motion, against a party who fails to make a showing

12 sufficient to establish the existence of an element essential to that party's case, and on which that

13 party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an

14 essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.

15 In such a circumstance, summary judgment should be granted, "so long as whatever is before the

16 district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

17 56(c), is satisfied."  Id. at 323.

18         If the moving party meets its initial responsibility, the burden then shifts to the opposing

19 party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

21 of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

22 required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

23 material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

24 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e.,

25 a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

26 Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

27 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

28 jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d

3

1    1433, 1436 (9th Cir. 1987).

2        In the endeavor to establish the existence of a factual dispute, the opposing party need not

3    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

4    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5    trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

6    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

7    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

8    amendments).

9        In resolving the summary judgment motion, the court examines the pleadings, depositions,

10   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ.

11   P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all

12   reasonable inferences that may be drawn from the facts placed before the court must be drawn in

13   favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369

14   U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is

15   the opposing party's obligation to produce a factual predicate from which the inference may be

16   drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810

17   F.2d 898, 902 (9th Cir. 1987).

18       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

19   that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

20   could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

21   trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

22       "[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be

23   considered on its own merits."  Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249

24   F.3d 1132,  1136 (9th Cir. 2001) (internal quotations and citation omitted).

25   **IV.    Eighth Amendment - Excessive Force**

26       "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

27   Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  Hudson v.

28   McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . .

4

1  . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks

2  and citations omitted).   The malicious and sadistic use of force to cause harm always violates

3  contemporary standards of decency, regardless of whether or not significant injury is evident. Id.

4  at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force

5  standard examines de minimis uses of force, not de minimis injuries)).   However, not "every

6  malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth

7  Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional

8  recognition de minimis uses of physical force, provided that the use of force is not of a sort

9  repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations

10  omitted).

11       "[W]henever prison officials stand accused of using excessive physical force in violation of

12  the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

13  in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

14  Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper

15  to evaluate the need for application of force, the relationship between that need and the amount of

16  force used, the threat reasonably perceived by the responsible officials, and any efforts made to

17  temper the severity of a forceful response." Id.  (internal quotation marks and citations omitted).

18  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end

19  it." Id.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**V.      Undisputed Facts** [2, 3]

1.      On October 26, 2003, defendant Gutierrez was working an overtime shift on third watch as the Control Booth officer for Building 4B3L, which is a Security Housing Unit (SHU) at California State Prison, Corcoran.

2.      At approximately 15:03, defendant Gutierrez was conducting lower tier showers in C-Section. Defendant Gutierrez released Inmate St. John to shower on the lower tier.

3.      After Inmate St. John entered the shower, he closed the shower door and the light for the shower door went off on the Control Booth panel.

4.      Defendant Gutierrez then released Plaintiff to the upper tier shower.

5.      Operational Procedure No. 222 states that no two cells will come out to shower at the same time.  If the cell houses only one inmate, only that inmate will be released for showers.  No other inmate will be released for showers, and no other inmate will be released in the same section until the inmate has returned to his assigned cell.

6.      Plaintiff lived in 4B-3L-cell 50, a different cell line than Inmate St. John.

7.      Plaintiff refused to go back to his cell, or shower.

8.      Defendant Gutierrez ordered Plaintiff to shower or take it back to his cell.

9.      Plaintiff was approximately 10-feet away from control booth officer. Defendant Gutierrez was in an elevated position, 10 to 15 feet overlooking plaintiff.

10.     Defendant Gutierrez alerted floor staff that an inmate was out and refusing to return to his

[2] Plaintiff's Statement of Undisputed Facts (Doc. 80) filed in support of his motion for summary judgment violates Local Rule 56-260(a) because he does not "enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon to establish that fact." Local Rule 56-260(a).  For many of plaintiff's undisputed facts, he cites all of his exhibits, which are numerous, as well as whole declarations without specificity.  The parties bear the burden of supporting their motion and opposition with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).The Court will not undertake to mine the record for triable issues of fact. Id.
        Notwithstanding the deficiencies with plaintiff's Statement of Undisputed Facts, the Court shall resolve plaintiff's motion for summary judgment.

[3] Defendants object to and move to strike Inmate Escareno's declaration, from p.1:17 - 2:6 on the grounds that it is hearsay, and some of it lacks foundation.  (Doc. 81, Exh. 23; Escareno Decl.; Doc. 97, pp.1-2). Escareno's statements concerning his conversations with Inmate St. John are hearsay and therefore stricken.

6

1   cell.

2   11.   Defendants Mason and Rivera went to the C-Section door and tried to calm Plaintiff down.

3         The dayroom door is approximately 10 feet away from where Plaintiff was standing, on the

4         same side wall as the control booth tower.

5   12.   Defendant Mason asked plaintiff to come to the door. Eventually, Plaintiff approached the

6         C-Section door.

7   13.   Defendant Mason emptied his MK9 pepper spray cannister.

8   14.   Defendant Rivera emptied his MK9 pepper spray cannister.

9   15.   Plaintiff backed away from the door and Defendant Rivera secured the food port.

10  16.   Defendant Gutierrez sounded an alarm and responding staff came into the rotunda.

11  17.   After being briefed by staff, defendant Warren tried to talk to Plaintiff through the C-Section

12        door. Multiple times he ordered Plaintiff to go back to his cell.

13  18.   Defendant Warren went up to the Control Booth, where he joined defendant Gutierrez in

14        ordering Plaintiff back into his cell.

15  19.   Defendant Warren had a 40 mm less lethal weapon.

16  20.   Defendant Warren contends that he thought Plaintiff had decided to bolt toward the lower

17        tier shower.

18  21.   Defendant Warren fired a 40 mm impact round, striking plaintiff in the face.

19  22.   Plaintiff went to the ground. Defendants contend that initially, no one knew Plaintiff was hit.

20  23.   Defendant Warren contends that he thought Plaintiff, who was lying prone with the left side

21        of his face on the ground, was looking at him and then looking at the weapon.  Plaintiff

22        contends that he was unconscious.

23  24.   Defendant Warren ordered Plaintiff to crawl back to the C-Section door.

24  25.   Defendant Warren fired two more 40 mm impact rounds.

25  26.   Blood was pooling near Plaintiff's head.

26  27.   Defendant Warren and Sgt. Castro determined that an emergency medical extraction should

27        be performed.

28  28.   Defendant Mason was the first person on the extraction team to enter the dayroom. He placed

7

1    a riot shield over Plaintiff's body. This is a protective measure taken during an extraction in

2    case the inmate has been faking. It helps control the inmate and limits his ability to jump up

3    and assault staff.

4    29.    Officer Thiessen was the second person on the extraction team to enter the dayroom.

5    30.    After being checked by the LVN assigned to Building 4B3L, Plaintiff was taken to the Acute

6           Care Hospital at Corcoran and then taken to Mercy Hospital in Bakersfield.

7    31.    Defendant A. K. Scribner was Warden of C.S.P Corcoran on October 26, 2003, and in that

8           capacity was responsible for the safety of all inmates and staff.

9    **VI.    Plaintiff's Motion for Summary Judgment**

10          On October 26, 2003, defendant Gutierrez was working an overtime shift on third watch as

11   the Control Booth officer for Building 4B3L, which is a Security Housing Unit (SHU) at California

12   State Prison, Corcoran. [UF 1].   At approximately 15:03, defendant Gutierrez was conducting lower

13   tier showers in C-Section. Defendant Gutierrez released Inmate St. John to shower on the lower tier.

14   [UF 2].   After Inmate St. John entered the shower, he closed the shower door and the light for the

15   shower door went off on the Control Booth panel. [UF 3]   Defendant Gutierrez then released

16   Plaintiff to the upper tier shower. [UF 4].   Plaintiff lived in 4B-3L-cell 50, a different cell line than

17   Inmate St. John. [UF 6].   Plaintiff states that he walked to the middle of the day room, and stopped

18   in front of the elevated Control Booth, where defendant Gutierrez was located. (Doc. 80, p.24,

19   Ramirez Decl., ¶9).   Plaintiff refused to go back to his cell, or shower. [UF 7].   Defendant Gutierrez

20   ordered Plaintiff to shower to take it back to his cell [UF 8].   Plaintiff was approximately 10-feet

21   away from control booth officer. Defendant Gutierrez was in an elevated position, 10 to 15 feet

22   overlooking plaintiff. [UF 9].   Plaintiff contends that he and defendant Gutierrez began arguing, and

23   defendant Gutierrez then called two other building officers, defendants Mason and Rivera. [Doc. 80,

24   p.24, Ramirez Decl., ¶9, UF 10].   Defendants Mason and Rivera were at the C-Section day room

25   door.[UF11].   The dayroom door is also approximately 10 feet away from where plaintiff was

26   standing, and on the same side of wall as control booth tower. [UF 11].   Defendant Mason asked

27   plaintiff to come to the door. Eventually, Plaintiff approached the C-Section door. [UF12].   Plaintiff

28   contends that he bent to the waist to talk defendants Mason and Rivera through the food port slot.

8

(Doc. 80, p.24, Ramirez Decl., ¶12; Doc. 81, Exh. 22, Curtis Decl.,[4] p.1:25-27). Defendants Mason and Rivera emptied their MK9 pepper spray cannisters. [UF 13, 14]. Plaintiff contends that defendants Mason and Rivera immediately threw open the foot port and started pepper-spraying plaintiff in the face and throat from less than a feet away, emptying two full canisters of M.K.9 pepper spray. (Doc. 80, pp.24-25, Ramirez Decl., ¶12, 14). Plaintiff contends that he backed away from the C-Section dayroom door, and refused to return to his cell until he talked to the warden about the assault. (Doc. 80, p.25, Ramirez Decl., ¶14). Defendant Gutierrez sounded an alarm and responding staff came into the rotunda. [UF16]. After being briefed by staff, defendant Warren tried to talk to Plaintiff through the C-Section door. Multiple times he ordered Plaintiff to go back to his cell. [UF17]. Defendant Warren went up to the Control Booth. [UF18]. Defendant Warren joined defendant Gutierrez in ordering plaintiff back to his cell. [UF 18]. Plaintiff contends that he and defendant Warren argued (Doc. 80, p.25, Ramirez Decl., ¶14). Defendant Warren had a 40 mm less lethal weapon. [UF19]. Defendant Warren fired a 40 mm impact round, striking Plaintiff in the face. [UF 21]. Plaintiff contends that he was knocked unconscious.(Doc. 80, p.26, Ramirez Decl., ¶16). Defendant Warren ordered Plaintiff to crawl back to the C-Section door. [UF24]. Defendant Warren fired two more 40 mm impact rounds. [UF25]. Plaintiff contends that both shots struck him in the head. (Doc. 81, Exh. 22, Curtis Decl, p.2:17-18[5]). Blood was pooling near Plaintiff's head. [UF26]. Defendant Warren and Sgt. Castro determined that an emergency medical extraction should be performed.[UF27]. Defendant Mason was the first person on the extraction team to enter the dayroom. He placed a riot shield over Plaintiff's body. This is a protective measure taken during an extraction in case the inmate has been faking. It helps control the inmate and limits his ability to jump up and assault staff. [UF28]. Officer Thiessen was the second person on the extraction team to enter the dayroom.[UF29]. After being checked by the LVN assigned to Building 4B3L, Plaintiff was taken to the Acute Care Hospital at Corcoran and then taken to Mercy Hospital in Bakersfield.

---

[4] Defendants move to strike inmate Curtis' statement, "...immediately both C/O's started pepper spraying plaintiff Ramirez in the face" on the grounds that it lacks foundation. Defendants' objection is overruled. Inmate Curtis states that he was in the cell next to plaintiff, and observed the pepper-spraying. (Doc. 97, p.3)

[5]Defendants' objection that Inmate Curtis's statement "and Sgt. Warren shot plaintiff 2 more times hitting plaintiff in the head" lacks foundation is overruled. (Doc. 97, p.3).

1   [UF30].

2   Defendants oppose plaintiff's motion on the ground that plaintiff's purported Separate

3   Statement of Undisputed Facts and Supporting Evidence consists primarily of argument and not fact,

4   and that much of his Statement is conclusory and speculative and constitutes hearsay.  Finally,

5   defendants contend that the force used in bringing plaintiff under control was reasonable as a matter

6   of law under the circumstances. (Doc. 95, p.2).  Defendants contend that on October 26, 2003,

7   plaintiff began walking by the lower shower tier yelling at Inmate St. John and using profanity. (Doc.

8   93, Defendants' Statement of Undisputed Facts, "DUF" 6 ). Defendants contend that plaintiff was

9   intoxicated. (DUF 7 ). Defendants contend that defendant Gutierrez ordered plaintiff to shower or

10  return to his cell.  (UF 8 ). Defendants contend that plaintiff became agitated.  (DUF 8 ). Defendants

11  Gutierrez alerted floor staff that an inmate was out and refusing to return to his cell.  (UF 10).

12  Defendants contend that the floor officers went to the C-Section door and tried to calm Plaintiff

13  down. (UF11).  Defendants contend that defendant  Mason instructed Plaintiff to go back to his cell

14  or cuff up. (DUF 11). Eventually, plaintiff approached the C-Section door. (UF 12) Defendants

15  contend that defendant Mason opened the food port to cuff plaintiff up. (DUF 11) Defendants

16  contend that plaintiff charged the C-Section door and stuck his hand through the food port. (DUF

17  12). Defendants contend that plaintiff had an inmate weapon in his hand, and just barely missed

18  stabbing defendant Mason. (DUF 13). Defendants contend that defendant Mason emptied his MK9

19  pepper spray cannister, aiming through the open food port. (DUF 14.) Then, defendant Rivera

20  emptied his MK9 pepper spray cannister, aiming at an angle through the open food port. Some of

21  the pepper spray hit plaintiff's upper torso. (DUF 15.) Defendants contend that defendants Mason

22  and Rivera used their pepper spray to try to get plaintiff to back away from the C-Section door so

23  they could secure the food port. (DUF 16.) After defendant Rivera used his pepper spray, Plaintiff

24  backed away from the door and Officer Rivera secured the food port. (DUF 17, UF 15).

25  Defendants contend that plaintiff was yelling and threatening to kill someone. (DUF 18).

26  Defendant Gutierrez sounded an alarm and responding staff came into the rotunda. (UF 16.) After

27  being briefed by staff, Defendant Warren tried to talk to Plaintiff through the C-Section door.

28  (UF17). Multiple times he ordered Plaintiff to drop the weapon and go back to his cell. Defendants

10

contend that plaintiff continued yelling that he was going to kill someone. (DUF 20.) Defendants
contend that defendant Warren went up to the Control Booth, where he continued to talk to Plaintiff,
trying to calm him down and divert his attention from Inmate St. John, who was in the shower. (DUF
21.) Defendants contend that Plaintiff began to look in the direction of the shower that contained
Inmate St. John. Defendants contend that Plaintiff was yelling in St. John's direction and backing
up toward the lower tier shower. Defendants contend that Plaintiff was also making slashing
movements with the hand that held the weapon. (DUF 22.) Defendants contend that Sgt. Warren
grabbed a 40 mm less lethal weapon and told Plaintiff several times to stop or he would use the
weapon. (DUF 23.) Defendants contend that Plaintiff suddenly began to turn to the right toward the
lower tier shower. (DUF 24.) Defendant Warren thought Plaintiff had decided to bolt toward the
lower tier shower. (DUF 25, UF 20). Defendant Warren fired, striking plaintiff in the face. (UF 21.)
Defendants contend that defendant Warren aimed at Plaintiff's right shoulder in an attempt to disable
him from using the weapon in his right Ramirez slowly went to the ground. (DUF 28.) Defendants
contend that Plaintiff placed the weapon on the floor on his right side somewhere between two and
four feet from his right hand. (DUF 29.) Defendants contend that no one knew plaintiff was hit.
(DUF 28.). Defendants contend that Defendant Warren thought Plaintiff who was lying prone with
the left side of his face on the ground, was looking at him and then looking at the weapon. (DUF
30.). Defendant Warren ordered Plaintiff to crawl back to the C-Section door. (UF 24.) Defendants
contend that it looked like Plaintiff was reaching for the weapon. (DUF 32.) Defendant Warren fired
two more 40 mm impact rounds at Ramirez' hand, which defendants contend stuck the floor near
Ramirez' hand. (DUF 33.) Blood started to pool near Plaintiff's head. (UF 26).

In reply, plaintiff argues that he is entitled to judgment as a matter of law. Plaintiff contends
that he has demonstrated that defendants acted maliciously and sadistically when they used excessive
force against plaintiff for the purpose of causing harm and injury (Doc. 115, p.2:24-26). Plaintiff
states that he did not have a weapon, that he did not threaten or yell at Inmate St. John, and that
there was no safety issue concerning Inmate St. John because he was in a locked and secured cell
during the incident. Plaintiff argues that no cause existed to use of force against him.

In the present case, the parties agree on very little. However, the evidence of defendants, as

11

1   the opposing party, is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that

2   may be drawn from the facts placed before the court must be drawn in favor of defendants.

3   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United States</u>

4   <u>v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam)).   Defendants' declarations and evidence

5   create a triable issue of fact.[6]   The court cannot choose to believe plaintiff's version of events over

6   defendants' version of events on summary judgment.   It is for the trier of fact to weigh the evidence

7   and make credibility determinations.   Accordingly, because there are material issues of fact in

8   dispute in this matter, plaintiff is not entitled to judgment as a matter of law on his excessive force

9   claims against defendants.

10          Based on the foregoing, the court finds that there exist disputes over material issues of fact

11   which preclude plaintiff from entitlement to summary judgment.   Accordingly, the court HEREBY

12

13          [6] Plaintiff objects to the Declaration of R. Adame on the grounds, *inter alia,* that the declarant lacks
personal knowledge.   The Court did not rely upon R. Adame's declaration in resolving either motion for summary

14   judgment.
        Plaintiff also objects to various portions of defendants Gutierrez's declaration on the grounds that defendant

15   Gutierrez has left out "key phrases and words" in an attempt to mislead the Court, that his declaration is inconsistent
with his unsworn original recount of the incident, that defendant Gutierrez could not have heard or seen parts of the

16   incident from the control tower, and finally that defendant Gutierrez is not being truthful.   Plaintiff is advised that
just as he is entitled to put forth his own version of events, defendant Gutierrez is also entitled to provide his own

17   declaration outlining the events as he recalls them.   The parties may disagree on the details of the incident occurring
October 26, 2003 and plaintiff may not object simply because he disagrees with defendant's version of events.

18   Further, the Court cannot reject a declaration on the ground that it is contradicted by other unsworn evidence, as
plaintiff requests here (e.g., the original statements); the Court may not weigh the evidence or assess its credibility.

19   <u>Leslie v. Grupo ICA</u>, 198 F3d 1152, 1153 (9th Cir. 1999).   Plaintiff's objections are overrruled.
        Plaintiff also objects to defendant Mason's declaration on the grounds that defendant Mason has been

20   untruthful. Plaintiff's objections are simply argument and overruled.
        Plaintiff's objections to M. Melo and S. Thiessen's declaration consist of plaintiff again arguing about the

21   disputed version of events.   Plaintiff's objections are overruled.
        Plaintiff objects to defendant Warren's declaration on the grounds that it is "false", "untrue", "totally

22   preposterous" and "without merit".   Again, plaintiff's objections are merely argument and therefore overruled.
Plaintiff also objects on the grounds that defendant Warren's statement is inconsistent in part with his original report

23   of the incident, and with his responses to plaintiff's requests for admissions.   First, defendant's original report is
unsworn.   Second, the Court does not find defendant's declaration inconsistent with his responses to plaintiff's

24   requests for admissions.
        Plaintiff objects to defendant Rivera's declaration, repeatedly contending that defendant Rivera is mistaken.

25   Plaintiff also argues that defendant Rivera has committed perjury because his declaration contains more detail that
his original statement.   Plaintiff's objections are overruled.   As previously stated, the Court may not weigh the

26   evidence or assess its credibility.   <u>Leslie</u>.
        Finally, plaintiff objects to I. Sekhorn's declaration on the grounds that it is conclusory, speculative and not

27   fact.   The Court did not rely on this declaration in resolving either motion for summary judgment.

28

RECOMMENDS that plaintiff's motion for summary judgment, filed June 1, 2006, be DENIED.

## VI.   Defendants' Motion for Summary Judgment

### A.   Discussion

Defendants argument in support of their cross-motion for summary judgment is articulated above.  (See pp. 10-11).

Plaintiff opposes defendants' motion for summary judgment on the ground that he has presented evidence that defendants acted maliciously and sadistically in using excessive force against him. (Doc. 113). Plaintiff argues that defendant Gutierrez released Inmate St. John and plaintiff to shower, in violation of Operation Procedure 222, which states, *inter alia*,  that no two cells are to come out to shower at the same time.  Plaintiff argues that he refused to shower or go to his cell in an attempt to speak with a lieutenant about securing an Institutional Classification Committee hearing.  Plaintiff argues that he did not have a weapon, that he did not threaten or yell at Inmate  St. John, and that there was no safety issue because Inmate St. John was in a locked and secured cell during the incident.  Plaintiff argues that defendants Mason and Rivera sprayed him in the face with pepper spray when he bent down to talk to them through the food port.  Plaintiff argues that he and defendant Warren began arguing, and that defendant Warren suddenly shot him. (Doc. 114, Ramirez Supplemental Decl., ¶11).

### C.   Resolution of Defendant Gutierrez's Motion for Summary Judgment

"'[S]ummary judgment or judgment as a matter of law in excessive force cases should be granted sparingly,'" Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  It is undisputed that an incident involving plaintiff and defendants Gutierrez, Mason, Rivera and Warren occurred on October 26, 2003 when plaintiff refused to go to shower or return to his cell.

Plaintiff contends that the fact that he and Inmate St. John were released to the showers at the same time in violation of Operational Procedure No. 222.  Plaintiff contends that this is attributable to defendants Gutierrez, who was conducting the lower tier shower program.  Plaintiff also contends that he and defendant Gutierrez argued throughout the incident.  Plaintiff further contends that defendant Gutierrez was in the control both when defendant Warren fired his weapon.

1  As was previously explained, the evidence of the opposing party is to be believed, <u>Anderson</u>,

2  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

3  court must be drawn in favor of the opposing party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

4  <u>Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per

5  curiam)).

6  The fact that defendant Gutierrez's actions may have violated Operational Policy No. 222

7  is irrelevant to this motion for summary judgment.  Even accepting as true plaintiff's allegations that

8  defendant Gutierrez deliberately violated Operational Procedure by allowing two inmates out to

9  shower at the same time, this violation does not give rise to an excessive force claim, nor does

10  plaintiff's contention that Inmate St. John was secure in the shower throughout the incident. Neither

11  party suggests that defendant Gutierrez applied any force against plaintiff, and the fact that defendant

12  Gutierrez was present during the incident does not itself give rise to an excessive force claim.

13  As there are no material questions of fact in dispute concerning defendant Gutierrez's

14  involvement, defendant Gutierrez is entitled to summary adjudication.

15  **D.      Resolution of Defendants Mason and Rivera's Motions for Summary**

16  **Adjudication**

17  Plaintiff concedes that on October 26, 2003, he refused orders to go to shower or return to

18  his cell.  All parties agree that at some point plaintiff approached the C-Section day-room door,

19  where defendants Mason and Rivera were located  The parties' versions part ways thereafter.

20  Plaintiff contends that he approached the day-room door and attempted to speak with

21  defendants Mason and Rivera through the foot port slot.  Plaintiff contends that defendants Mason

22  and Rivera then pepper sprayed him in the face with two full canisters of pepper spray from

23  approximately one foot away  Plaintiff denies that he had a weapon of any sort or attempted to attack

24  defendants Mason or Rivera.

25  Defendants contend that when defendants Mason and Rivera opened the food port to cuff

26  plaintiff up, plaintiff suddenly charged the C-Section door and stuck his hand through the food port

27  door. (Defs.' Ex. A 24, 27-28 and 34-35; Mason Decl. ¶ 7; Rivera Decl.¶ 7-8.)(Gutierrez Decl. ¶ 14;

28  Mason Decl. ¶ 8; Rivera Decl. ¶ 9.)  Defendants contend that plaintiff had an inmate weapon in his

hand, and just barely missed stabbing Officer Mason. (Mason Decl. ¶ 8; Rivera Decl. ¶ 9; *see* Melo Decl. ¶ 5; Warren Decl. ¶ 5; Gutierrez Decl. ¶¶ 14 and 17.) Defendants contend that defendant Mason emptied his MK9 pepper spray cannister, aiming toward the open food port. (Mason Decl. ¶ 9; Rivera Decl. ¶ 10; Gutierrez Decl. ¶ 14; Thiessen Decl. ¶ 4.) Defendants contend that defendant Rivera then emptied his MK9 pepper spray cannister, aiming at an angle through the open food port. Some of the pepper spray hit Plaintiff's upper torso. (Rivera Decl.¶ 11; Mason Decl. ¶ 11; Gutierrez Decl. ¶ 14; Thiessen Decl. ¶ 5.)

Given the material factual disputes in this matter, defendants Mason and Rivera are not entitled to summary adjudication.  While defendants have presented evidence that the force used was in good faith in order to prevent an attack and to restore order, plaintiff has submitted evidence that because he did not attempt to attack defendants and that there existed no situation which required the use of two full canisters of pepper spray in his face.  As a result, plaintiff argues that the force used excessive, in violation of his rights.  The existence of factual disputes regarding what plaintiff was or was not doing when the pepper spray was applied and whether or not there existed a situation which required the use of force precludes the award of summary judgment to defendants Mason and Rivera.  The trier of fact must sort through the parties' versions of the event and determine whether the force used was excessive or not under the circumstances.

### E.    Resolution of Defendant Warren's Motion for Summary Adjudication

With respect to defendant Warren, plaintiff contends that after being pepper-sprayed, he started arguing against with defendant Gutierrez and Warren.  Plaintiff denies taking any steps in any direction after he began arguing with defendant Warren, and denies looking over his shoulder towards the shower.  Plaintiff contends that defendant Warren suddenly shot plaintiff.

As previously stated, defendants contend that defendant Warren continued to talk to plaintiff, trying to calm him down and divert his attention from Inmate St. John, who was in the shower.(Warren Decl. ¶ 7; Gutierrez Decl. ¶ 17-18; Mason Decl. ¶15.).  Defendants contend that plaintiff began to look in the direction of the shower that contained Inmate St. John. He was yelling in St. John's direction and backing up toward the lower tier shower. He was also making slashing movements with the hand that held the weapon. (Warren Decl.¶ 11-14; Gutierrez Decl. ¶ 17-18.)

Defendants contend that defendant Warren told plaintiff several times to stop or he would use the weapon. (Gutierrez Decl. ¶ 18; Warren Decl. ¶ 15.) 24. Defendants contend that Plaintiff began to turn to the right toward the lower tier shower.(Warren Decl. ¶ 15; Gutierrez Decl. ¶¶ 18-19.) Defendant Warren thought Plaintiff had decided to bolt toward the lower tier shower. (Warren Decl. ¶ 15.). Defendants contend that defendant Warren aimed at Plaintiff's right shoulder in an attempt to disable him from using the weapon in his right hand. Zone 1, which includes the legs and buttocks area was not available because defendant Warren was in an elevated position and Plaintiff had made a sudden move. (Warren Decl. ¶ 16.) Plaintiff slowly went to the ground.  Initially, no one knew he was hit. (Warren Decl. ¶¶ 17-18; Gutierrez Decl. ¶ 19.).  Defendants contend that Plaintiff placed the weapon on the floor on his right side somewhere between two and four feet from his right hand. (Warren Decl. ¶ 18; Gutierrez Decl. ¶ 19; *see* Mason Decl. ¶ 16; Thiessen Decl. ¶ 9.) Defendant. Warren thought Plaintiff, who was lying prone with the left side of his face on the ground, was looking at him and then looking at the weapon. (Warren Decl. ¶¶ 18-19.) It looked like Plaintiff was reaching for the weapon. (Warren Decl. ¶ 19; Gutierrez Decl. ¶ 20; Mason Decl. ¶ 17.) Defendant Warren fired two more 40 mm impact rounds at Plaintiff's hand. Defendants contend that both rounds struck the floor near Plaintiff's hand but did not strike him. (Warren Decl. ¶ 19; Gutierrez Decl. ¶ 20; Mason Decl. ¶ 17.)

Again, there is a material question of fact in dispute concerning the circumstances under which defendant Warren fired.  Drawing all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of plaintiff, the court cannot find that defendant Warren is entitled to summary adjudication.

**F.    Resolution of Defendant Scribner's Motion for Summary Adjudication**

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, the complaint or amended complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor may be

16

1   held liable for the constitutional violations of subordinates 'if the supervisor participated in or

2   directed the violations, or knew of the violations and failed to act to prevent them.'" <u>Hydrick v.</u>

3   <u>Hunter</u>, 500 F.3d 978, 988 (9th Cir. 2007) (quoting <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir.

4   1989)).

5       Plaintiff's complaint, filed October 18, 2004, is devoid of any allegations whatsoever

6   concerning defendant Scribner, and consequently did not give fair notice to defendant Scribner of

7   the claim against him.

8       It is undisputed that Defendant A. K. Scribner was warden of C.S.P Corcoran on October 26,

9   2003, and in that capacity was responsible for the safety of all inmates and staff. (UF 31). In support

10  of his motion for summary judgment, Plaintiff contends that defendant Scribner was aware of the

11  use of excessive force by correctional officers, but failed to do anything to stop the injustices, and

12  that "therefore he shared responsibility for the suffering which resulted." Plaintiff may not expand

13  the scope of this litigation via deposition testimony or his opposition to defendants' motion for

14  summary judgment. <u>See</u> <u>Gilmore v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004).

15  Likewise, plaintiff may not expand the scope of this litigation by including new claims against

16  defendant Scribner that were not alleged in his complaint in his own motion for summary judgment.

17  The proper procedure for adding new claims is to amend the pleadings, per Rule 15 of the Federal

18  Rules of Civil Procedure.[7]

19      As there are no allegations contained in plaintiff's complaint against defendant Scribner,

20  defendant Scribner is entitled to summary adjudication.

21      **G.    Qualified Immunity**

22      Defendants Mason, Rivera, and Warren argue that they are entitled to qualified immunity

23  because any and all force used against plaintiff by defendants was incidental to a good faith effort

24  to maintain order and restore discipline.[8]  Defendants further argue that reasonable officers in their

25

26      [7] On June 6, 2006, plaintiff filed a motion to amend his complaint. (Doc. 82). By order issued separately,
    plaintiff's motion was denied.

27

28      [8]As defendants Scribner and Gutierrez are entitled to summary adjudication, the Court does not reach their
    arguments for qualified immunity.

1    position could reasonably have believed that the conduct was lawful.

2        Government officials enjoy qualified immunity from civil damages unless their conduct

3    violates "clearly established statutory or constitutional rights of which a reasonable person would

4    have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified

5    immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

6    injury, the facts alleged show the defendant's conduct violated a constitutional right.  <u>Saucier v.</u>

7    <u>Katz</u>, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask

8    whether the right was clearly established.  <u>Id</u>.  The inquiry "must be undertaken in light of the

9    specific context of the case, not as a broad general proposition . . . ." <u>Saucier v. Katz</u>, 533 U.S. 194,

10   201 (2002).  "[T]he right the official is alleged to have violated must have been 'clearly established'

11   in a more particularized, and hence more relevant, sense:  The contours of the right must be

12   sufficiently clear that a reasonable official would understand that what he is doing violates that

13   right."  <u>Saucier</u>, 533 U.S. at 202 (citation omitted).

14       In resolving the issue of qualified immunity, the court must view the evidence in the light

15   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  <u>Martinez</u>

16   <u>v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).  Plaintiff has presented evidence that he was not

17   threatening or attempting to attack either the correctional officers or inmate St. John. Plaintiff has

18   also presented evidence that the pepper spray was applied when Plaintiff was attempting to speak

19   with defendants Mason and Rivera.  Finally, Plaintiff has presented evidence that he was arguing

20   with defendant Warren when defendant Warren suddenly shot him. These facts are sufficient to show

21   that defendants violated Plaintiff's rights under the Eighth Amendment.

22       At the time of the incident on October 26, 2003, the law was "sufficiently clear that a

23   reasonable official would understand that what he is doing violates that right," <u>Saucier</u>, 533 U.S. at

24   202 (citation omitted).  With respect to excessive force claims, the "inquiry . . . is whether force was

25   applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

26   cause harm." <u>Hudson</u>, 503 U.S. at 7.  The malicious and sadistic use of force to cause harm always

27   violates contemporary standards of decency, whether or not significant injury is evidence.  <u>Id</u>. at 9.

28   No reasonable officer would have believed that spraying an inmate with two full canisters of pepper

18

1    spray in the face, nor shooting an argumentative inmate in the face, was force "applied in a good-

2    faith effort to maintain or restore discipline . . . ." <u>Id.</u> at 7.  Due to the existence of material factual

3    disputes concerning what occurred during the incident where plaintiff was pepper-sprayed and shot,

4    defendants Mason, Rivera, and Warren are not entitled to qualified immunity.

5    **VII.    Conclusion**

6            Based on the foregoing, it is HEREBY RECOMMENDED that:

7            1.        Plaintiff's motion for summary judgment, filed June 1, 2006, be DENIED;

8            2.        Defendants' motion for summary judgment, filed July 21, 2006, be DENIED IN

9                      PART and GRANTED IN PART as follows:

10                              a.        Defendants Mason, Rivera, and Warren's motion for summary

11                                       adjudication be DENIED:

12                              b.        Defendants Gutierrez and Scribner's motion for summary

13                                       adjudication be GRANTED and defendants Gutierrez and Scribner be

14                                       dismissed from this action; and

15           3.        This matter be set for jury trial.

16           These Findings and Recommendations will be submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30)**

18   **days** after being served with these Findings and Recommendations, the parties may file written

19   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

20   Findings and Recommendations."  The parties are advised that failure to file objections within the

21   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

22   1153 (9th Cir. 1991).

23           IT IS SO ORDERED.

24   **Dated:    October 28, 2008**              **_/s/_ Dennis L. Beck**
                                                      UNITED STATES MAGISTRATE JUDGE

25

26

27

28